**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**

**March 11, 2015**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**John L. Fuller, II,**
**Respondent Below, Petitioner**

**vs) No. 14-0043** (Kanawha County 12-AA-24)

**Patricia S. Reed, Acting Commissioner of the**
**West Virginia Division of Motor Vehicles,**
**Petitioner Below, Respondent**


**MEMORANDUM DECISION**

John L. Fuller, II, appeals to this Court the December 19, 2013, final order of the Circuit Court of Kanawha County. That order reversed the February 2, 2012, order of the Office of Administrative Hearings ("OAH"), which reversed the order of revocation of the respondent, Patricia S. Reed, Commissioner of the West Virginia Division of Motor Vehicles ("the Commissioner").[1] The Commissioner revoked Mr. Fuller's driver's license for the offense of driving under the influence of alcohol ("DUI"). The petitioner, Mr. Fuller, by counsel, Carter Zerbe and David Pence, filed a brief with this Court. The Commissioner, through counsel, Elaine L. Skorich, filed a response. Mr. Fuller, by counsel, filed a reply.

Upon consideration of the standard of review, the parties' briefs, the record presented, and the oral arguments, this Court concludes that the circuit court committed no reversible error. Therefore, a memorandum decision affirming the circuit court's December 19, 2013, order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On July 6, 2010, Corporal Darrel Hammonds of the Dunbar Police Department arrested Mr. Fuller for DUI subsequent to an investigatory traffic stop initiated by Corporal Justin Bailes, also of the Dunbar Police Department. Thereafter, the Commissioner ordered the revocation of Mr. Fuller's driver's license by letter dated July

---

[1] While this case was pending before the Court, Patricia S. Reed replaced Steven O. Dale as Commissioner of the West Virginia Division of Motor Vehicles. Pursuant to Rule 41(c) of the West Virginia Rules of Appellate Procedure, the name of the current public officer has been substituted accordingly in this action.

1

23, 2010. Mr. Fuller timely requested a hearing before the OAH to contest the revocation. A hearing was scheduled for January 12, 2011, but that hearing was continued to June 16, 2011, at the request of Mr. Fuller. Although Mr. Fuller was present at the June 16, 2011, hearing, only Cpl. Hammonds and Cpl. Bailes testified.[2]

Cpl. Hammonds testified that he was on a routine patrol on July 6, 2010. At approximately 2:30 a.m., Cpl. Hammonds followed about three car lengths behind Mr. Fuller's vehicle on West Washington Street at 25 miles per hour for half a mile. Cpl. Hammonds stated:

> Well, what I had observed was once that I traveled close to the rear end of Mr. Fuller's vehicle, he decelerated and then turned in to a closed business, which was the Cold Spot Bar & Grill, plus they're like a convenience store.
> He just pulled in to the lot. It was obviously closed. All the lights were out, and no vehicles were in the lot. I passed the vehicle as it came down towards the 2900 block of Dunbar Avenue. I was going to turn around in the first wide spot and then come back and see if maybe Mr. Fuller was on a cell phone making a phone call, you know, what reason that he pulled in to the lot.
> As I came over the tracks — the tracks are approximately 100 feet from the business, I passed Corporal Bailes. It was at that time I got on my radio and I said, this vehicle, this Accord parked up here just shot into this lot. And at that time they traveled towards the vehicle.

Cpl. Hammonds, whose windows were down, further stated that as his vehicle was getting out of sight of Mr. Fuller's vehicle, he "heard the engine rev" as Mr. Fuller's vehicle "took off in the opposite direction that he had been coming from." On the DUI Information Sheet completed at the time of the arrest, Cpl. Hammonds observed that Mr. Fuller's vehicle was "accelerating/decelerating rapidly" and "fleeing/evasion."

Cpl. Bailes testified:

---

[2] Between the arrest and the time of the hearing, Cpl. Hammonds began working as a deputy with the Putnam County Sherriff's Department, and Cpl. Justin Bailes began working as an officer with the South Charleston Police Department. For purposes of this memorandum decision, both patrolmen will be referred to by their rank with the Dunbar Police Department on the date of the arrest.

2

As soon as I passed Patrolman Hammonds on Dunbar Avenue, on the radio he stated that a vehicle, a gold Honda, had tried to avoid him — or evade him at the Cold Spot. [Mr. Fuller] pulled in the Cold Spot lot as [Patrolman Hammonds] was turning around to catch up, I believe, with him.

. . . .

We caught up with the vehicle as it was exiting the lot at a high rate of speed and took off left out of the lot towards the Pour House.

. . . .

We then caught up with the vehicle as it was turning right into the Pour House lot which was also closed. . . . He turned in the lot and went to the back of the lot and stopped, and we caught up with him and stopped him.

Cpl. Bailes stated that he initiated the investigatory stop, but that Cpl. Hammonds first approached Mr. Fuller.

Cpl. Hammonds noted on the DUI Information Sheet that Mr. Fuller had the odor of alcoholic beverage on his breath, that his speech was slurred, that his eyes were glassy and red, and that he was unsteady and staggered while walking to the roadside. Mr. Fuller admitted to drinking a bottle of tequila. Cpl. Hammonds administered three field sobriety tests: the horizontal gaze nystagmus test, the walk and turn test, and the one leg stand test. Mr. Fuller failed all three tests. Cpl. Hammonds did not administer a preliminary breath test. The DUI Information Sheet indicates that Cpl. Hammonds placed Mr. Fuller under arrest at 2:33 a.m.

After the arrest, Cpl. Hammonds transported Mr. Fuller to the Dunbar Police Department. Cpl. Hammonds then administered a breath test at 3:18 a.m. That test showed Mr. Fuller's blood alcohol content was 0.227%.

Following the June 16, 2011, hearing, the chief hearing examiner of the OAH entered an order on February 2, 2012, reversing the Commissioner's order of revocation. The OAH's order stated that the stop of Mr. Fuller's vehicle was unlawful because the officers failed to establish "a reasonable articulate suspicion for the investigative stop." According to the order, because the stop was unlawful the resulting arrest was also unlawful. The order concluded that pursuant to W. Va. Code § 17C-5A-2 (2010), because the arrest was unlawful, the OAH was required to rescind the Commissioner's order of revocation. The Commissioner appealed the February 2, 2012, order to the circuit court.

By order dated December 19, 2013, the circuit court reversed the OAH's order. The circuit court reasoned that the OAH erred by making "a monumental leap to apply

3

the criminal exclusionary rule to the administrative proceeding at hand." The circuit court reversed the OAH on the basis that the OAH misapplied W. Va. Code § 17C-5A-2 and wrongfully reinstated Mr. Fuller's driver's license. The circuit court did not make any conclusions as to whether the stop of Mr. Fuller's vehicle was lawful, but it did note that "the OAH confuses a lawful arrest with a lawful stop." Mr. Fuller now appeals the circuit court's December 19, 2013, order.

The standard of review in appeals dealing with driver's license revocation proceedings is set forth in syllabus point 1 of *Muscatell v. Cline*, 196 W. Va. 588, 474 S.E.2d 518 (1996):

> On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W.Va. Code § 29A–5–4(a) and reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong.

Mr. Fuller's first assignment of error is that the circuit court abused its discretion by concluding that, pursuant to W. Va. Code § 17C-5A-2(f) (2010), the statute in force at the time of Mr. Fuller's arrest, the lawfulness of an arrest is unconnected to the lawfulness of an investigatory stop. The Commissioner asserts that the circuit court correctly interpreted the controlling statute. W. Va. Code § 17C-5A-2(f) provides:

> In the case of a hearing in which a person is accused of driving a motor vehicle while under the influence of alcohol, controlled substances or drugs, or accused of driving a motor vehicle while having an alcohol concentration in the person's blood of eight hundredths of one percent or more, by weight, or accused of driving a motor vehicle while under the age of twenty-one years with an alcohol concentration in his or her blood of two hundredths of one percent or more, by weight, but less than eight hundredths of one percent, by weight, the Office of Administrative Hearings shall make specific findings as to: (1) Whether the investigating law-enforcement officer had reasonable grounds to believe the person to have been driving while under the influence of alcohol, controlled substances or drugs, or while having an alcohol concentration in the person's blood of eight hundredths of one percent or more, by weight, or to have been driving a motor vehicle while under the age of twenty-one years with an alcohol concentration in his or her blood of two hundredths of one percent or more, by weight, but less than eight hundredths of

4

one percent, by weight; (2) *whether the person was lawfully placed under arrest for an offense involving driving under the influence of alcohol, controlled substances or drugs*, or was lawfully taken into custody for the purpose of administering a secondary test: Provided, That this element shall be waived in cases where no arrest occurred due to driver incapacitation; (3) whether the person committed an offense involving driving under the influence of alcohol, controlled substances or drugs, or was lawfully taken into custody for the purpose of administering a secondary test; and (4) whether the tests, if any, were administered in accordance with the provisions of this article and article five [§§ 17C-5-1 et seq.] of this chapter.

(Emphasis added.)

Under W. Va. Code § 17C-5A-2(f)(2), the OAH is required to make a specific finding as to "whether the person was lawfully placed under arrest for an offense involving driving under the influence of alcohol, controlled substances or drugs, or was lawfully taken into custody for the purpose of administering a secondary test." In *Dale v. Ciccone*, ___ W. Va. ___, ___, 760 S.E.2d 466, 473 (2014) (quoting *Dale v. Odum*, ___ W. Va. ___, ___, 760 S.E.2d 415, 420 (2014)), we clarified that, under this statute, "'absent a valid investigatory stop, a finding that the ensuing arrest was lawful cannot be made.'" Accordingly, "an individual cannot be considered lawfully arrested for DUI where law enforcement did not have the requisite articulable reasonable suspicion to initiate the underlying traffic stop." *Ciccone*, ___ W. Va. at ___, 760 S.E.2d at 473.

In *Dale v. Arthur*, No. 13-0374, 2014 WL 1272550 (W. Va. Mar. 28, 2014) (memorandum decision), we determined that the exclusion of evidence collected incident to an unlawful arrest resulting from an unlawful stop was proper under W. Va. Code § 17C-5A-2(f). We relied on *Clower v. West Virginia Department of Motor Vehicles*, 223 W. Va. 535, 678 S.E.2d 41 (2009), which, although superseded by amendments made to W. Va. Code § 17C-5A-2 in 2008, is currently persuasive authority following amendments to the same statute in 2010. We recognized that

[i]n *Clower* this Court found that Mr. Clower was not lawfully arrested as required by West Virginia Code § 17C–5A–2(e) (2004). We therefore did not address the evidence showing Mr. Clower had slurred speech, smelled of alcohol, failed the field sobriety tests, and had a blood alcohol content of 0.182 percent.

5

*Arthur*, 2014 WL 1272550, at *3. The exclusion of evidence was required by the statute and was not an application of the judicially created exclusionary rule. *See id.* at *3 ("We acknowledge that the administrative law governing driver's license revocation proceedings is a creature of statute, created by the Legislature. Therefore, the decision to include this requirement is within the prerogative of the Legislature, and it is not to be invaded by this Court."); *Dale v. Judy*, No. 14-0216, 2014 WL 6607609, at *4 (W. Va. Nov. 21, 2014) (memorandum decision) (concluding that the OAH and circuit court did not err by "ignoring the evidence of DUI that was obtained after the [unlawful] stop").

Therefore, regarding Mr. Fuller's first assignment of error, we agree that the circuit court erroneously determined that the OAH applied the criminal exclusionary rule. However, in this case, the error warrants reversal only if the OAH was correct in concluding that the arrest of Mr. Fuller was unlawful. In Mr. Fuller's second assignment of error, he claims that the OAH correctly determined that the underlying investigatory stop was unlawful. It is his position that because the underlying investigatory stop was unlawful, the subsequent arrest was unlawful, and all evidence collected after the investigatory stop that he was DUI was properly ignored by the OAH.

We have held that "[p]olice officers may stop a vehicle to investigate if they have an articulable reasonable suspicion that the vehicle is subject to seizure or a person in the vehicle has committed, is committing, or is about to commit a crime." Syl. pt. 1, *State v. Stuart*, 192 W. Va. 428, 452 S.E.2d 886 (1994) (in part); *see also Illinois v. Wardlow*, 528 U.S. 119, 125 (2000) ("[T]he determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior."). "When evaluating whether or not particular facts establish reasonable suspicion, one must examine the totality of the circumstances, which includes both the quantity and quality of the information known by the police." Syl. pt. 2, *Stuart*, 192 W. Va. 428, 452 S.E.2d 886; *see also United States v. McBride*, 676 F.3d 385, 392 (4th Cir. 2012) (internal quotation marks omitted) ("We consider the totality of the circumstances, which requires us to evaluate the cumulative information available to the detaining officer, rather than engaging in piecemeal refutation of the individual facts upon which the officer relied during the *Terry* [*v. Ohio*, 392 U.S. 1 (1968),] stop.").

"Whether a Fourth Amendment violation has occurred turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time and not on the officer's actual state of mind at the time the challenged action was taken." *Maryland v. Macon*, 472 U.S. 463, 470–71 (1985) (citation omitted) (internal quotation marks omitted); *see also Floyd v. City of New York*, 959 F. Supp. 2d 540, 567 (S.D.N.Y. 2013) (quoting *United States v. Bayless*, 201 F.3d 116, 133 (2nd Cir. 2000)) ("Reasonable suspicion is an objective standard . . . ."). The United States Supreme Court has said that

6

[t]he scheme of the Fourth Amendment becomes meaningful only when it is assured that at some point the conduct of those charged with enforcing the laws can be subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search or seizure in light of the particular circumstances.

*Terry v. Ohio*, 392 U.S. 1, 21 (1968). Thus, the question we must answer is an objective one: whether a police officer with the same information as Cpl. Bailes, the officer who initiated the investigatory stop, would have had, under the totality of the circumstances, an articulable reasonable suspicion to conduct the stop. Upon our careful review of the record, we disagree with Mr. Fuller and the OAH, and we conclude that Cpl. Bailes had an articulable reasonable suspicion justifying the investigatory stop.

Cpl. Bailes testified before the OAH that he received a radio call from Cpl. Hammonds stating that Mr. Fuller had attempted to evade him by pulling into the parking lot of a closed business, the Cold Spot, at 2:30 a.m. Cpl. Bailes was justified in relying on Cpl. Hammonds's report. *See Carter v. State*, 120 So.3d 207, 209 (Fla. Dist. Ct. App. 2013) (citing *United States v. Ventresca*, 380 U.S. 102, 110 (1965) ("Observations of fellow law enforcement officers engaged in a common investigation are plainly a reliable basis for initiating a traffic stop."). In *Stuart*, we explained that

The criteria for reasonable suspicion to stop a vehicle are very similar to a street stop under *Terry*. Factors such as *erratic or evasive driving*, the appearance of the vehicle or its occupants, the area where the erratic or evasive driving takes place, and the experience of the police officers are significant in determining reasonable suspicion.

192 W. Va. at 433 n.10, 452 S.E.2d at 891 n.10 (emphasis added); *see also Wardlow*, 528 U.S. at 124 (citation omitted) ("Our cases have also recognized that nervous, evasive behavior is a pertinent factor in determining reasonable suspicion. . . . Headlong flight—wherever it occurs—is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such."). An investigating officer could reasonably conclude, based upon Cpl. Hammonds's report, that Mr. Fuller was driving evasively, which this Court has determined is a significant factor in determining reasonable suspicion.

Cpl. Bailes further testified that moments after receiving the evasion report from Cpl. Hammonds, he witnessed Mr. Fuller's vehicle leave the parking lot at a high rate of speed. *See State v. Wright*, No. 11-0154, 2012 WL 3023801, at *2–3 (W. Va. March 30, 2012) (memorandum decision) (finding an articulable reasonable suspicion to initiate an investigatory stop of petitioner's vehicle when the investigating officer "testified in

magistrate court that petitioner 'shot off in front of' him as the traffic light turned green 'as if he was trying to race, causing the tires of [petitioner's] vehicle to squeal'"). An investigating officer could reasonably characterize Mr. Fuller's driving as erratic, which this Court has determined is a significant factor in determining reasonable suspicion.

Cpl. Bailes watched Mr. Fuller's vehicle pull off into the parking lot of an adjacent business, the Pour House, and then he watched as the car proceeded toward the back of the parking lot. The officers testified that the Pour House was also obviously closed, which would have been apparent to Mr. Fuller when he passed it seconds before turning at the Cold Spot. A reasonable officer could conclude that Mr. Fuller's behavior in the early morning hours was, at a minimum, suspicious.

While Cpl. Bailes did not testify that he witnessed Mr. Fuller engage in any illegal behavior prior to the investigatory stop, the observation of illegal behavior is not a necessary prerequisite for conducting an investigatory stop. *See Reid v. Georgia*, 448 U.S. 438, 441 (1980) (citation omitted) ("[T]here could . . . be circumstances in which wholly lawful conduct might justify the suspicion that criminal activity was afoot . . . ."); *McBride*, 676 F.3d at 392 ("[A]cts that may appear innocuous in certain contexts may suggest criminal activity under other circumstances."). We find that the facts of the present case are similar to those in *State v. Richardson*, 501 N.W.2d 495 (Iowa 1993), in which the Iowa Supreme Court concluded that reasonable suspicion existed to justify an investigatory stop. In that case, the court said:

> Various factors combined to give Deputy Briggle reasonable cause to stop Richardson's car. He observed a car parked next to a chain link fence in a nonresidential area where there were no legitimate attractions. It was 12:40 a.m. when all of the surrounding businesses were closed. Deputy Briggle knew this area had frequently been burglarized. He observed what he considered to be deliberately furtive actions when the defendant pulled out just as the officer completed his U-turn and began approaching.
> The court of appeals majority emphasized that Richardson's actions were subject to a legitimate explanation. However, reasonable cause may exist to investigate conduct which is subject to a legitimate explanation and turns out to be wholly lawful.

*Richardson*, 501 N.W.2d at 497. Like in *Richardson*, Mr. Fuller was arrested in the early morning hours in an area where the surrounding businesses were closed, and Mr. Fuller engaged in what could be described as "deliberately furtive action" in response to the presence of the officers. Additionally, Mr. Fuller was witnessed driving at a high rate of speed. *Cf. Stuart*, 192 W. Va. at 433, 452 S.E.2d at 891 (concluding that while the fact

8

that the defendant drove "25 miles per hour in a 35 miles per hour zone on a relatively straight road at 1:00 a.m." was "insufficient to establish reasonable suspicion," an additional suspicious factor—an anonymous tip regarding the defendant—provided reasonable suspicion).

Although each of Mr. Fuller's actions in the early morning of July 6, 2010, taken individually, may not have given the officers reasonable suspicion to conduct an investigatory stop, we conclude that pursuant to controlling and persuasive case law, under the totality of the circumstances, Cpl. Bailes's observations provided him with an articulable reasonable suspicion to initiate an investigatory stop. Thus, the OAH's determination that the investigatory stop was unlawful was in error.

Because the OAH's justification for reversing the revocation of Mr. Fuller's license was based on its erroneous decision that the investigatory stop was unlawful, we conclude that the circuit court was correct to reverse the February 2, 2012, order of the OAH, despite the circuit court's erroneous determination that the OAH had improperly applied the exclusionary rule. We therefore affirm the circuit court's December 19, 2013, order reinstating the Commissioner's revocation of Mr. Fuller's driver's license.

Affirmed.

**ISSUED:** March 11, 2015

**CONCURRED IN BY:**
Chief Justice Margaret L. Workman
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II

**DISSENTING:**
Justice Robin Jean Davis, dissenting and writing separately

9

Davis, Justice, dissenting:

In this proceeding, the petitioner, John Fuller, argued that the police did not have reasonable suspicion to stop his vehicle. Therefore, his driver's license should not have been revoked for DUI. The majority opinion disagreed with Mr. Fuller and concluded that the police had reasonable suspicion to stop his vehicle. For the reasons set out below, I dissent.

### It Is Not Unlawful to "Avoid" the Police by Pulling into a Parking Lot

The facts of this case are not in dispute. On July 6, 2010, at around 2:30 a.m., Mr. Fuller was driving along West Washington Street in Dunbar, West Virginia. A local police officer, D.A. Hammonds, followed Mr. Fuller's vehicle for about a half mile. At no time did Officer Hammond turn on his blue lights or have any reason to suspect Mr. Fuller of doing anything unlawful. At some point, Mr. Fuller lawfully pulled into a parking lot. Officer Hammond continued driving along. He did not follow Mr. Fuller into the parking lot. Officer Hammond passed a fellow officer, J.A. Bailes. Officer Hammond radioed Officer Bailes and told him that Mr. Fuller had pulled into a parking lot in order to try and "avoid" him. Based solely upon the allegation of "avoidance," Officer Bailes drove to the parking lot and stopped Mr. Fuller's vehicle. When Officer Bailes stopped Mr. Fuller's vehicle, he did not have reasonable suspicion that Mr. Fuller had done anything unlawful. All that Officer Bailes knew was that Mr. Fuller allegedly tried to avoid Officer Hammond.[1] As a result of this stop, Mr. Fuller was arrested for DUI.

Mr. Fuller was charged with DUI under a version of the DUI statute that specifically required a lawful stop of a motorist's vehicle. This Court recently addressed the version of the statute applicable to this case in *Dale v. Ciccone*, 233 W. Va. 652, 760 S.E.2d 466 (2014). In *Dale*, this Court held:

> Consequently, in cases in which the applicable version of West Virginia Code § 17C-5A-2 has included the requirement for a lawful arrest . . ., an individual cannot be considered lawfully arrested for DUI where law enforcement did not have the requisite articulable reasonable suspicion to initiate the underlying traffic stop.

*Dale*, 233 W. Va. at 659, 760 S.E.2d at 473 (internal citations omitted). Indeed, prior to the majority decision in this case, our law was clear in holding that "[p]olice officers may stop a vehicle to investigate if they have an articulable reasonable suspicion that the

---

[1]Indeed, the majority opinion concluded: "Cpl. Bailes did not testify that he witnessed Mr. Fuller engage in any illegal behavior prior to the investigatory stop[.]"

vehicle is subject to seizure or a person in the vehicle has committed, is committing, or is about to commit a crime." Syl. pt. 1, in part, *State v. Stuart*, 192 W. Va. 428, 452 S.E.2d 886 (1994). We also held in *Stuart* that, "[w]hen evaluating whether or not particular facts establish reasonable suspicion, one must examine the totality of the circumstances, which includes both the quantity and quality of the information known by the police." Syl. pt. 2, *Stuart*, *id.*

The reasonable suspicion standard for stopping a motor vehicle is constitutionally based. This standard recently was observed in *Navarette v. California*, ___ U.S. ___, 134 S. Ct. 1683, 188 L. Ed. 2d 680 (2014), as follows:

> The Fourth Amendment permits brief investigative stops – such as the traffic stop in this case – when a law enforcement officer has a particularized and objective basis for suspecting the particular person stopped of criminal activity. The "reasonable suspicion" necessary to justify such a stop is dependent upon both the content of information possessed by police and its degree of reliability. The standard takes into account the totality of the circumstances – the whole picture. Although a mere "hunch" does not create reasonable suspicion, the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause.

*Navarette*, ___ U.S. at ___, 134 S. Ct. at 1687, 188 L. Ed. 2d 680 (internal quotations and citations omitted).

Clearly, under *Stuart* and *Navarette*, the investigatory stop in this case was unlawful. At the time that Officer Bailes stopped Mr. Fuller, the only articulable reason for the stop was that Officer Hammonds reported that Mr. Fuller had tried to avoid him. I have found no case in the country that allows the police to stop a motor vehicle merely because an officer received a report that the motorist was trying to avoid another officer by pulling into a parking lot.[2] Under the majority opinion, whenever a police officer is following a motorist, that motorist must not pull into a parking lot because it will be interpreted by the police as "avoidance," – which, under the majority opinion, is criminal conduct. The majority ruling is simply wrong!

The decision in this case was squarely controlled by our decision in *Muscatell v. Cline*, 196 W. Va. 588, 474 S.E.2d 518 (1996). In *Muscatell*, state Trooper

---

[2]Of course, it is unlawful for a driver to "flee" from the police under certain circumstances. *See* W. Va. Code § 61-5-17 (2014) (Repl. Vol. 2014).

G.L. Brown received a radio call from Trooper P. Ferguson requesting him to be on the lookout for a small, light blue vehicle traveling toward Clarksburg.[3] Trooper Brown was further informed of the name of the driver of the vehicle, Beverly S. Jackson Muscatell, and that she might have been involved in a hit and run accident, and might be under the influence of alcohol. Subsequent to the radio call, Trooper Brown spotted a vehicle fitting the description he received from Trooper Ferguson. The vehicle was pulled over by Trooper Brown, and the driver identified herself as Ms. Muscatell. Trooper Brown detected alcohol on Ms. Muscatell's breath and administered field sobriety tests. Ms. Muscatell failed the tests and was arrested for DUI. Ms. Muscatell contested the suspension of her driver's license as a result of the arrest. An administrative law judge upheld the suspension. The circuit court reversed after concluding, among other things, that the stop of Ms. Muscatell's vehicle was unlawful.

In the appeal by the Commissioner, this Court found that the testimony was not clear as to whether Trooper Brown stopped Ms. Muscatell because of erratic driving or solely based upon the radio report. The opinion examined the matter as follows:

> [T]he mere fact that Trooper Brown acted on the basis of [a radio call] is not dispositive of the issue presented. The question presented is whether subsequent police work or other facts supported its reliability. . . . We note first that the trooper knew at least that the automobile to be watched for was light blue in color, as was appellee's. Second, appellee's automobile was indeed observed by the trooper to be traveling toward Clarksburg. . . . Third, we note that there is substantial confusion in the record as to whether the make or model of the automobile to be watched . . . was verified by the trooper, by independent police work, to be the same make or model as that driven by appellee. Fourth, it is clear that appellee's vehicle had not been involved in a hit-and-run accident. . . . It would appear that, solely on the basis of these four factors, an investigatory stop of appellee could not be justified. If just these factors were held to be sufficient to make an investigatory stop, one could conclude that the protections afforded by the Fourth Amendment to the United States Constitution and Section 6 of the West Virginia Constitution are more illusory than real. . . . To hold otherwise would justify the stopping of any light blue car headed east and driven by a female.

---

[3]At the time of the official radio call, Trooper Brown did not know the name of the caller.

. . . .

> While the validity of an investigatory stop would be clearly established *if a police officer makes the stop after observing a violation of the law*, the ambiguity in the record regarding the trooper's observations immediately before the stop . . . cannot stand as justification for an investigatory stop. . . . Accordingly, we reverse and remand this cause to the circuit court with directions that the matter be remanded to the Commissioner to determine in the first instance the propriety of the investigatory stop and for other proceedings consistent with this opinion.

*Muscatell*, 196 W. Va. at 597-99, 474 S.E.2d at 527-29 (emphasis added). In *Muscatell*, we held that the police cannot stop a vehicle merely because of a radio call stating that the driver (1) might have been involved in a hit and run accident and (2) might be under the influence of alcohol. *Muscatell* was clear in holding that the state and federal constitutions required the officer also observe the driver violating the law, before the vehicle could be stopped under these circumstances.

In the instant case, all that Officer Bailes was told on the radio was that a driver of a car tried to avoid Officer Hammonds by pulling into a parking lot. In finding this to be reasonable suspicion of a violation of law, the majority opinion is inconsistent with *Muscatell* and is violently in conflict with the due process requirements of both the state and federal constitutions. *See Clower v. West Virginia Dep't of Motor Vehicles*, 223 W. Va. 535, 544, 678 S.E.2d 41, 50 (2009) ("[T]he circuit court concluded that Mr. Clower's [sic] was not lawfully placed under arrest because Trooper Kessel did not have the requisite articulable reasonable suspicion to initiate a traffic stop of Mr. Clower's vehicle. We agree."), *superseded by statute as stated in Miller v. Chenoweth*, 229 W. Va. 114, 727 S.E.2d 658 (2012) (per curiam). *See also Dale v. Barnhouse*, No. 14-0056, 2014 WL 6607493, at *3 (W. Va. Nov. 21, 2014) (memorandum decision) ("As this Court has already determined, the investigating officer in this case did not have the requisite articulable reasonable suspicion to initiate a traffic stop and, thus, respondent was not lawfully placed under arrest."); *Dale v. Haynes*, No. 13-1327, 2014 WL 6676546, at *4 (W. Va. Nov. 21, 2014) (memorandum decision) ("[W]e cannot say that the circuit court erred in finding that the Commissioner failed to present sufficient evidence to evince a valid and lawful traffic stop or arrest."); *Dale v. Judy*, No. 14-0216, 2014 WL 6607609, at *5 (W. Va. Nov. 21, 2014) (memorandum decision) ("[T]he investigating officer in this case did not have the requisite articulable reasonable suspicion to initiate a traffic stop and, thus, respondent was not lawfully placed under arrest.").

Based upon the foregoing, I dissent.

13